KEVON GLICKMAN, ESQ.
KEVON GLICKMAN LAW LLC
329 W. 3rd Ave, Conshohocken, PA 19428
kevonglickman@icloud.com ;
ph: 610-761-6833
*Attorney for Plaintiff:* ID KG3580

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

     MILKCRATE ATHLETICS, INC.,                    Civil Action No._____

                         Plaintiff,                      **COMPLAINT**

                -against-

     ADIDAS NORTH AMERICA, INC.,
     and VICTOR PITRE,
     and COREY GILKE

                       Defendants

                         X

Plaintiff, MILKCRATE ATHLETICS, INC. (hereinafter "Plaintiff"), by its attorney,

Kevon Glickman Law, LLC complaining of the above named Defendants ADIDAS NORTH

AMERICA, INC. and Victor Pitre (aka "Vic Lloyd"), and Corey Gilke (hereinafter

"Defendants"), alleges as follows:





1

**NATURE OF THE CASE**

1.   Milkcrate Athletics, created in 1996 by fashion and music impresario, Aaron

LaCanfora (hereinafter "LaCrate"), is known in the street-wear culture as the "Cool

Kids" label. So cool that major apparel companies including Vans, New Balance,

and Beats by Dre have corroborated with Milkcrate, while others such as Adidas,

Under Armour, and The Brooklyn Nets have attempted to co-opt Milkcrate's iconic

name and image to give their goods the "cool kids" sizzle/cache.

2.   Adidas clearly values and covets Milkcrate and evidently thinks Milkcrate is so

cool that it is once again, knowingly, willfully, and intentionally ripping-off

Milkcrate's name and logo and treating whatever attendant potential fall-out and/or

resultant lawsuit simply as a "cost of doing business."

3.   In 2019, Milkcrate and Adidas reached an amicable settlement in the lawsuit captioned

Milkcrate Athletics Inc. v. Adidas North America Inc., S.D.N.Y., No.  19-7513.

## Adidas, Brooklyn Nets Hit With TM Suit Over Milk Crate Logo

By **Hannah Albarazi**

Law360 (August 12, 2019, 6:39 PM EDT) -- A New York City-based streetwear company slapped Adidas with a trademark infringement lawsuit Monday alleging top executives at the athletic wear giant expressed an interest in collaborating with Milkcrate Athletics Inc. but then created a Brooklyn Nets t-shirt that ripped off the brand's milk crate logo.



Milkcrate Athletics' 2011 design on the left and Adidas' 2016 design on the right.

2

4.      Two years later and it's Déjà vu. Despite the previous out of court settlement,

Adidas did it again. This time, through the release of not one (1), not two (2), but

three (3) "Milkcrate" sneakers.





Sneaker #1: Vic Lloyd x adidas Superstar
-   Features a milkcrate w/ record on and circular text
    on Adidas superstar sneaker
-   **Release date 2/5/2020**

Sneaker #2: Vic Lloyd x adidas Forum Low "Chicago
Works Harder"
-   Features a milkcrate w/ basketball  on and
    circular text on Adidas Forum Low sneaker
-   **Release date 10/24/2020**



Sneaker #3: Vic Lloyd x adidas Forum Low
-   Features a milkcrate w/ basketball and circular text on Adidas Forum
    Low sneaker
-   **Release date 7/3/2021**

**Adidas Sales Description: "Basketball and music have a shared origin in the milkcrate.
Designed by Vic Lloyd, these adidas Superstar shoes represent the spirit of the crate diggers
and DJs that call Chicago home."**

3

5.      This is an action at law and in equity for copyright and trademark infringement and false designation of origin arising under 17 U.S.C. §§ 501 *et seq.*, the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (1994) ("Lanham Act") and for the related claims of willful and intentional infringement, dilution deceptive business practices, and unfair competition under the statutory and common law of New York. Plaintiff seeks injunctive relief to prevent Defendants from using Plaintiff's name and registered trademarks and copyrights in any way and to prevent Defendants from profiting from Plaintiff's goodwill and further seeks compensatory, treble, and punitive damages and attorneys' fees resulting from Defendants' infringing acts.

6.      Defendants have long been aware of Plaintiff's rights to the registered trademarks and copyrights and Defendants have blatantly copied Plaintiff's trademarks/copyrights literally treading on the goodwill associated with the Plaintiff and its business.

7.      Defendants are offering for sale and selling sneakers, which bear and are advertised and sold using confusingly similar and identical imitations of Plaintiff's trademarks and copyrights.

8.      Defendants' sneakers are not manufactured by Plaintiff, nor are Defendants connected to or affiliated with or authorized to use Plaintiff's trademarks and/or copyrights which is causing confusion and deceiving consumers and the public regarding its source, while diluting the distinctive quality of Plaintiff's marks.

9.      Adidas is well aware of the Plaintiff, LaCrate, and the Milkcrate brand due to previous dealings including being sued in federal court in New York City by Milkcrate over Adidas' unauthorized use of the Milkcrate name and logo.

10.     Furthermore, upon information and belief, co-defendants' and partners Vic Lloyd ("Lloyd") and Corey Gilke ("Gilke") were wholesale buyers of the Milkcrate brand for

4

over ten years; purchasing for re-sale Milkcrate's clothing and accessories for their retail store located in Chicago, Illinois.

11.  Both men, Lloyd and Gilke have full knowledge of Milkcrates brand and copyrights and trademarks.

12.  Despite this knowledge, Defendants deliberately continue to infringe upon Milkcrate's copyright and trademark through the sales of sneakers bearing the Milkcrate logo even going so far as to threaten LaCrate with violence after LaCrate asked them to stop selling the infringing sneakers.

13.  Defendant Adidas is guiding Lloyd and Gilke and using the size and strength of its company to financially back and use its market dominance to take advantage of a smaller company and is willfully infringing upon Plaintiff's work.

14.  Adidas desires to control and dominate the youth and streetwear market and is arrogantly acting as if this blatant infringement is simply a cost of doing business and is exploiting the Plaintiff's work without providing proper credit nor compensation for the use of the designs he created and owns.

## JURISDICTION AND VENUE

15.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 1338(b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

16.  Additionally, pursuant to 28 U.S.C. §1332, this Court has subject-matter jurisdiction due to the parties being citizens of different states and the amount in controversy exceeding the value of $75,000.

17.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events and damages giving rise to the claim occurred in this

district and the Defendants contacts are sufficient to be subject to personal jurisdiction in this district as Defendants regularly transact business within the State, the Defendants have manufactured or distributed products used or consumed within this State in the ordinary course of trade, and the Defendants are causing substantial confusion and deception among consumers in New York resulting in irreparable injury to Plaintiff's valuable reputation, goodwill, trademark, name and other intellectual property assets in New York.

18.   For those Defendants primarily based outside of New York, given their willful and knowing exploitation of the infringing work in New York and their numerous and continuing business dealings in New York, each could reasonably anticipate being sued in a court in the United States, and specifically, in New York.

**PARTIES**

19.   At all relevant times herein, Plaintiff Milkcrate Athletics, Inc. has been and remains a domestic corporation organized and existing under the laws of the State of New York, with its principal place of business located in New York City.

20.   Upon information and belief, at all relevant times herein, Defendant Adidas North America, Inc. has been and remains an Oregon corporation organized and existing under the laws of the State of Oregon, with a principal place of business at 5055 North Greeley Avenue, Portland, Oregon 97217. Adidas regularly conducts business in New York City.

21.   Upon information and belief, at all relevant times herein, Defendant Vic Lloyd has been a clothes and accessory buyer in the city of Chicago, first working for the famous store "Leaders" in Chicago, where Lloyd bought Milkcrate products from LaCrate for re-sale to Leaders' customers for over ten years.

22.  Upon information and belief, Lloyd now owns and operates his own store called " Fat Tiger Workshop". Fat Tiger Workshop is a street-wear retail destination and creative hub, with a principal place of business at 836 N. Milwaukee Ave, Chicago, Illinois 60642.

23.  Upon information and belief, at all relevant times herein, Defendant Corey Gilke is the owner of the Leaders store, stocking men's streetwear, with a principal place of business at 1152 W. Madison Street, Chicago, Illinois.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

24.  Plaintiff Milkcrate Athletics, is a long established, trend-setting streetwear and youth sportswear apparel company that has successfully positioned itself in the market of fashion for lifestyle apparel and footwear.

25.  Since 1996, Plaintiff has designed, manufactured, marketed and sold, its street-wear, sportswear and other lifestyle apparel (including but not limited to shirts and hats) with distinctive designs under the trademark MILKCRATE ATHLETICS.



26.  Since March 2006, Plaintiff has also utilized the trademark MILKCRATE for athletic

footwear/sneakers in conjunction with several major athletic companies.






Milkcrate & Medicom Toy Company
collaboration



THE "MILKCRATE" TRADEMARKS

27.   Plaintiff is the owner of multiple federal and international trademark registrations, which are incontestable and which Milkcrate uses exclusively and continuously to advertise, promote and sell its goods in interstate commerce, including:

a.   the federal trademark registration for the word mark MILKCRATE, Reg. No. 4,768,355, issued by the United States Patent and Trademark Office ("PTO") on December 25, 2001, in International Class 25 for "clothing, namely t-shirts, sweatshirts, hats, headwear, jackets, jeans, pants";

b.   the federal trademark registration for the word mark MILKCRATE ATHLETICS, Reg. No. 2,522,377 issued by the PTO on December 25, 2001, for "clothing, namely t-shirts, sweatshirts, hats, headwear, jackets, jeans, pants";

c.   the federal trademark registration for the design:



Reg. No. 2, 573,353 in class 25 for "clothing, namely t-shirts, sweatshirts, hats, headwear jackets, and jeans.

d.   the federal trademark registration for the design:



Reg. No. 2,717,445, in class 25 for "<u>clothing namely t-shirt, sweatshirts, hats, jeans, and shirts</u>";

e.   the federal trademark registration for the mark MILKCRATE Reg. No. 3,608,409, issued by the PTO on April 21, 2009, for "<u>basketball sneakers</u>"; and

f.   the federal registration for the mark and design "Milkcrate Athletics NYC/SURFACE DIVISION", Reg. No. 3,817,037,



in Class 25 for "<u>clothing, namely, T-shirts, sweatshirts, hats, jeans, and shirts.</u>" The design part of the mark prominently features the depiction of a milkcrate; (collectively the "Milkcrate Trademarks").

28.   Plaintiff has continuously and exclusively used its Milkcrate Trademarks in commerce in conjunction with the sail of clothing and accessories continually since 1996 (25 years). As such, Plaintiff's products have become increasingly well-known in the basketball community, fashion industry, punditsof hip hop (rap) music, and to mass consumers in general.

29.    Additionally, since the inception of the Milkcrate brand of products, Plaintiff has
       invested substantial time, money, resources and hard work to ensure that Plaintiff
       offers high quality goods to customers and as such Milkcrate has established
       substantial goodwill in New York, throughout the United States, Europe, Asia and
       other parts of the world.

30.    Through hard work and significant investment into the quality of its goods, the
       Milkcrate brand has continued to grow in prosperity, respect, and recognition.
       Plaintiff's Milkcrate products have garnered the attention of media outlets and retail
       stores around the world, and its goodwill and reputation have led to branding
       partnerships with high end specialty brands such as (see below), Vans sneakers, New
       Balance sneakers, Beats by Dre (headphones and audio equipment), and HBO's "The
       Wire" (media).







31.     Through Plaintiff's continuous and exclusive use of the Milkcrate trademarks and

copyrights,  Plaintiff has established incontestable ownership rights of the Milkcrate

logo and holds the exclusive right to use the design in interstate commerce in

connection with the sale of clothing and footwear/sneakers.

<u>MILKCRATE'S COPYRIGHTS</u>

32.     Plaintiff is the copyright owner of the following Milkcrate Athletics logos:

  

VA 1-261-139                              VA 1-283-374                              VA 1-318-150



VAu 406-783



VAu 407-224

33. These copyright registrations provide Milkcrate with the exclusive rights to print, display, distribute, and perform the work. Additionally, Plaintiff has the exclusive rights to publish and transmit the work online.

34. Use of this original work on products in an identical manner that are not associated with Milkcrate Athletics is a violation of the Plaintiff's exclusive rights associated with the copyright and Defendant's use of this copyright on their own goods (3 types of sneakers bearing the Milkcrate logo) without the permission of the Plaintiff is copyright infringement.

<u>MILKCRATE'S HISTORY</u>

35. Aaron LaCanfora ("LaCrate"), owner and creator of Milkcrate Athletics, was born in Baltimore, MD in 1975.

 

Milkcrate Athletics – the brain child of Aaron LaCrate

36. LaCrate, with the help of his father started the first skateboard shop in Baltimore City in 1985 at the age of ten years old, where he sold skateboards, music mixtapes of his own creation, and early hand-designed tee shirts which evolved into Milkcrate Athletics. **https://www.youtube.com/watch?v=J9tsYe7UjTo**

37. Long before Pharrell Williams became the creative director for Adidas originals  and

Kanye West and Adidas created "Yeezy's", LaCrate received his first trademark for

Milkcrate Athletics.



Pharrell with partner from NERD wearing Milkcrate t-shirt.



Kanye West and Aaron LaCrate brainstorming.



Aaron LaCrate (wearing Milkcrate t-shirt)  DJ'ing for Kanye West.  **https://vimeo.com/41124360**

38.     Since its inception and trademark registration, LaCrate and his brand have been sought

after by high profile rappers, musicians, and  taste-makers as one of  the most

authentic street fashion brands - blending the cultures of music and fashion into a

14

seamless symbol of music, basketball, and athletics.

**https://vimeo.com/240326956**
**https://www.youtube.com/watch?v=6usWnVUbCXg**
**https://vimeo.com/88722944**
**https://www.youtube.com/watch?v=fgKZVTF1NM0**
**https://baltimore.cbslocal.com/2017/10/11/aaron-lacrate-exhibit/**
**https://www.vice.com/en/article/nevv5m/aaron-lacrates-lils-crizzle-tape-brings-**
**baltimore- and-the-dmv-together**
**https://www.wmar2news.com/news/region/baltimore- city/exhibition-to-explore-**
**highlandtown-s-history-with-skateboarding-and-graffiti- culture**

39.   In 1999, Milkcrate Athletics began sponsoring numerous music shows and concerts

for the most popular rap artists in the world, including but not limited to:

Eminem




Run-DMC                                               A Tribe Called Quest




Rakim

Wu-Tang Clan





Outkast



All of whom have worn and endorsed Milkcrate's distinct trademarked clothing. These events and pairings have been covered and featured in the most influential magazines, websites and blogs in the world.

16



40.     Milkcrate Athletics has produced, styled, designed, remixed, and collaborated with

such other world-renowned artists and creators, including Jay Z, Blur, Gorillaz,

Madonna, Mark Ronson, Bun B, Mobb Deep, Lily Allen, Lana Del Rey and Kanye

West.

> **https://www.youtube.com/watch?v=Fl8v0blfI0E**
> **http://www.mtv.com/news/1662714/jim-jones-everybody-jones/**
> **https://www.interscope.com/music/miles-away-remixes/miles-away-aaron-lacrate-**
> **samir-b-more-gutter-remix**
> **https://www.youtube.com/watch?v=S37YR1rpFjM**
> **https://www.thefader.com/2016/03/21/tate-kobang-aaron-lacrate-aint-a-damn-thing-**
> **change**
> **https://www.clashmusic.com/features/clash-dj-mix-aaron-lacrate)**

41.     These collaborations with some of the most popular names in music and pop-culture

have helped establish LaCrate into a well-known DJ, producer, remixer, promoter,

designer, distinguished owner of the Milkcrate Athletics brand, and most importantly

friend and confidant to music stars and fashion tastemakers. Through these

collaborations, LaCrate has pushed Milkcrate into a respected brand among those

within the industry.

42.     Certain partnerships such as the relationship with the rapper, "Schoolboy Q" has led to

Milkcrate clothing being featured in magazines and music videos that have over 1

billion views of the Milkcrate trademarked logo. The popularity of collaborations such

as this one, lead to the featured products being highly desired by the "Cool Kids."

> https://www.youtube.com/watch?v=_L2vJEb6lVE
> https://www.youtube.com/watch?v=rEMsjeq43_U
> https://www.youtube.com/watch?v=8zo9VTJUVWc
> https://www.youtube.com/watch?v=KnnYiW5dnhQ)






43.     Furthermore, the Milkcrate brand continues to be featured by some of the world's

biggest stars. Billie Eilish, one of the most popular American singers today, posted a

magazine cover photo to her Instagram sporting the Milkcrate Athletics bucket hat.

The Instagram photo, posted in 2018, generated over 1 million likes. Other superstars

have been pictured wearing and supporting the Milkcrate brand over the years,

increasing the popularity of the brand worldwide.



Billie Eilish, seven time Grammy Award winner, two time American Music Award winner, and two time MTV European Music Awards winner, wearing the Milkcrate logo in an Instagram post.



Aaron LaCrate in the studio producing with Lana Del Rey, winner of 2012 Brit Award for International Breakthrough Act, 2013 winner of Brit Award for Internatational Female solo Artist, and six-time Grammy nominee.

19

Jay-Z wearing Milkcrate's King of New York t-shirt in his film "Fade to Black".







Damon Albarn & Blurr.

Paul McCartney & Damon Albarn at British Awards.

Milkcrate & Mobb Deep music and clothing collaboration.





Marc Ronson, British-American music producer. 7 time Grammy Award Winner, Academy Award Winner and Golden Globes winner, known for his work with Amy Winehouse, Adele, Lady Gaga, Lily Allen, Miley Cyrus, and Bruno Mars, among others.

 

Swizz Beatz and Aaron LaCrate.



Aaron LaCrate, Bun B, and ASAP Rocky.

44.     Because Milkcrate Athletics has been and remains the clothing of choice for so many
popular contemporary artists, the trademarked and copyrighted Milkcrate logo and
symbol remains at the epicenter of cultural authenticity, connecting pop culture,
sports, and street-wear.

DEFENDANTS LLOYD AND GILKE AND THE INFRINGING SNEAKERS

45.     Upon information and belief, LaCrate sold merchandise and apparel to Defendants Vic

Lloyd and Corey Gilke for resale at the Chicago store Leaders. Defendants sold these

clothes in Leaders for a period of over ten years. There is an abundance of email

correspondence to prove this as well as messages showing threats of violence directed

at LaCrate.



46.     After purchasing clothing and apparel from LaCrate for over a period of ten years,

Vic Lloyd now owns and operates his own store "Fat Tigers Workshop" in Chicago,

Illinois and began to use LaCrate's Milkcrate design on his own t-shirts and sold them

using this infringing logo:



47.     The above design on Lloyd's shirt is basically a rip off of Milkcrate's designs that are

copyrighted and trademarked like the Milkcrate logo that is featured on all of

Milkcrate's own clothing, featured below:

 

48.     Most importantly, Vic Lloyd and Adidas' most senior management conspired to

create three (3) new sneakers using LaCrate's identical Milkcrate design on the

tongue of the shoes.








Sneaker #1: Vic Lloyd x adidas Superstar

Sneaker #2: Vic Lloyd x adidas Forum Low "Chicago Works Harder"

Sneaker #3: Vic Lloyd x adidas Forum Low

## DEFENDANT ADIDAS AND THE INFRINGING SNEAKERS

49.     Defendant Adidas, is well aware of Milkcrate Athletics and is familiar with Milkcrates

unique presence in the world of fashion, music, and athletics for over 25 successive

and continuous years.

50.     This is not the first time this has occurred between Adidas and LaCrate. In fact,

Milkcrate has previously sued Adidas and reached an out of court settlement. A 2019

lawsuit against Adidas filed by Milkcrate accused the company of infringing upon LaCrate's trademark by creating a Brooklyn Nets T-shirt that contained the Milkcrate logo. This new situation involving the Adidas sneakers is analogous to the actions that Adidas took just a few short years ago.



51.  In early 2020, (i) Adidas collaborated with Vic Lloyd for the creation of the first "Chicago Plays Harder, Chicago Works Harder, Superstar Shoes."

"basketball and music have a shared origin in the milkcrate. Designed by Vic Lloyd, these adidas Superstar shoes represent the spirit of the crate diggers and DJs that call Chicago home."

**https://www.adidas.com/us/chicago-plays-harder--chicago-works-harder-superstar-shoes/FX3464.html**

52.  On October 24, 2020 (ii) Adidas and Vic Lloyd released a second collaborated sneaker, the "Chicago Works Harder" Forum Low. This sneaker built upon the previous release and once again contained the Milkcrate logo on the tongue of the shoe.

53.  As recently as July 1, 2021 (iii) Adidas and Vic Lloyd have collaborated for a third time for another "Chicago Works Harder" sneaker. This sneaker released on July 3rd 2021, once again contains the Plaintiffs mark on the tongue of the shoe.

The Adidas press release: "Vic Lloyd dedicates his kicks to his first loves, music and basketball. A close up shot at the tongue tags shows two logos, each featuring a milk crate…"

**https://sneakerbardetroit.com/vic-lloyd-adidas-forum-low-fx3466-release-date/**

Through this statement, Adidas makes it evident that the design included on these shoes was stolen from the Plaintiff. **https://sneakerbardetroit.com/vic-lloyd-adidas-forum-low-fx3466-release-date**

Home › Adidas › Vic Lloyd x adidas Forum Low Inspired by Chicago's Work Ethic

# Vic Lloyd x adidas Forum Low Inspired by Chicago's Work Ethic

 by Mario Briguglio · Jul 1, 2021



54. This is a clear case of trademark and copyright infringement by the Defendants in this situation. Both Adidas and Vic Lloyd are well aware of Aaron LaCrate and his Milkcrate trademarks and copyrights. Despite this knowledge, Defendants collaborated with each other and willfully ripped off Plaintiff's design.

## ADIDAS MANAGEMENT

55. Adidas Management has actively been involved in attempting to rip-off LaCrate for the company's own benefit. Senior Management has overseen the previous blatant disregard for LaCrate's trademarks and copyrights through the use of his logo on their Brooklyn Nets t-shirt.

56. This infringement occurred after LaCrate approached Adidas executives about a potential collaboration. Adidas management took the ideas that LaCrate had discussed and took the ideas for their own.

57. Once again, Adidas is disregarding the rights associated to the Plaintiff by using the Milkcrate logo on sneakers. Prior to the first infringement suit, LaCrate had actively corresponded with Adidas senior executives Brian Foresta and Jon Wxler.

58. The following Adidas executives are either aware of or have had direct dealings with the Plaintiff: Marc Dolce, Denis Dekovic, and Marc Miner. These people in charge of designing at Adidas are familiar with LaCrate because they were the designers at Adidas in charge during LaCrate's previous lawsuit. These men are responsible for the "urban footwear design studio" at Adidas and therefore obviously know about LaCrate and his marks.

59. Adidas is following in the footsteps of their past and again developing products that rip-off Plaintiff's mark. This time, Adidas conspired with Vic Lloyd and Corey Gilke and teamed up with them to design these new Adidas shoes.

## DEFENDANTS TRADEMARK INFRINGEMENT

### *The Eight Polaroid Factors that Determine Infringement*

60. In order to prevail on a trademark infringement claim under the Lanham Act, a plaintiff must demonstrate (1) that it has a valid mark entitled to protection and (2) the defendant's use of it is likely to cause confusion. *Chloe v. Queen Bee of Beverly Hills, LLC,* No. 06-CV-3140 (RJH), 2011 WL 3678802 at 3, (S.D.N.Y. Aug. 19, 2011.) Registration of a trademark constitutes prima facie evidence of its validity. 15 U.S.C. §115(a). As stated above, Milkcrate's trademarks are incontestable.

61. Defendants sneakers are causing confusion with the Milkcrate brand. An eight-factor test set out in *Polaroid Corp v. Polard Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961) is used in order to evaluate the likelihood of consumer confusion. (1) The strength of the mark; (2) the similarity of the marks; (3) the competitive proximity of the products; (4) the likelihood that the senior user will "bridge the gap"; (5) evidence of actual confusion; (6) the junior user's bad faith in adopting the mark; (7) the respective quality of the products; and (8) the sophistication of the consumers in the relevant market.

62. The first factor to consider is the strength of the mark. A mark's "strength" is "crucial to the likelihood of confusion analysis because a plaintiff's well-known association with the claimed mark "makes it much more likely that consumers will assume wrongly that (the plaintiff) is somehow associated with (the defendant's product) or has authorized the use of its mark. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 873 (2d Cir. 1986). This strength depends on the mark's "inherent distinctiveness" and its "acquired distinctiveness." *Virgin Enters. Ltd. v. Nawab* 335 F.3d141, 147 (2n Cir. 2003). There are four categories of marks for purposes of inherent distinctiveness analysis: generic, descriptive, suggestive, and arbitrary and fanciful.

*Abercrombie & Fitch Co v. Hunting World, Inc.* 537 F.2d 4, 9 (2d Cir. 1976*).* An arbitrary mark applies to a common word in an unfamiliar way. *Lane Capital Management, Inc. v.Lane Capital Management, Inc.* 192 F.2d 337, 344 (2d Cir. 1999). Arbitrary and fanciful marks are considered inherently distinctive and are "automatically protected." The Milkcrate mark is arbitrary with respect to apparel, streetwear, pop-culture, and basketball. Its name has led to a common meaning for the "cool kids" and thus, the term Milkcrate is inherently distinctive. Both Adidas and Milkcrate marks are strong.

63.   The second factor to analyze is the similarity of the marks. "In determining the similarity of marks in an infringement action, a court must examine the visual appearanceof each mark in the context of its use." *Jim Bean Brands Co v. Beamish & Crawford Ltd.,* 937 F.2d 729, 735 (2d Cir. 1991). The court does not consider the marks in the abstract, but instead evaluates their "overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers. *Malletier v. Burlington Coat Factory Wearhouse Corp.,* 426 F.3d 532, 537 (2d Cir. 2005). As detailed above, the Milkcrate design that Defendant uses on its apparel are identical to the Plaintiff's mark. The use of the Milkcrate design on the tongue of the shoe is indistinguishable to Plaintiff's design on the tags of Milkcrate sneakers. Taken the use of the mark into context, it is clear that there is an identical mark that causes a likelihood of confusion among consumers.

64.   The third factor is the competitive proximity of the two products. The competitive proximity factor "concerns whether and to what extent two products compete with each other." *Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 480 (2d Cir. 1996).

In order to assess such competition, courts evaluate "the nature of the products themselves and the structure of the relevant market," by considering the channels through which goods are sold. *Id.* Both Plaintiff and Defendant sell clothing, apparel, and footwear, which weighs in favor of market proximity. Both the Plaintiff and Defendant sell apparel online and in retail stores and collaborate with other companies. These identical channels of trade make it impossible for a consumer who sees the Milkcrate design on the Adidas website to not be confused.

65. The fourth factor to analyze is the likelihood that the senior user will "bridge the gap." This term is used to describe the senior user's interest in preserving avenues of expansion and entering into related fields." *C.L.A.S.S. Promotions, Inc v. D.S. Magazines,Inc.* 753 F.2d 14, 18 (2d Cir. 1985). This requires evaluating the "likelihood that the prior owner will bridge the gap." *Guthrie Healthcare Sys. V. ContextMedia, Inc.,* 826 F.3d 27, 45 (2d Cir. 2016). Plaintiff's products have gained popularity among the "Cool Kids" for a period of over two decades. Previous collaborations with national brands such as New Balance, Beats by Dre, and Vans indicate that the Milkcrate design is sold on a national platform competing with products associated with Adidas. Plaintiff's use of the mark in commerce first indicates they are the senior user in this situation. Plaintiff therefore has the right to protect their attempts to further expansion.

66. A fifth factor to consider is actual confusion. Plaintiff has received multiple inquiries from consumers, business associates, and friends wondering if Milkcrate is involved with the newly released Adidas sneakers.

67. The sixth factor is the junior user's bad faith in adopting the mark. The "bad faith" inquiry looks to whether the defendant adopted its mark with the intention of

capitalizing on plaintiff's reputation and goodwill and any confusion between his and

the senior user's product." *Lang v. Retirement Living Pub. Co., Inc.,* 949 F.2d 576,

583 (2d Cir. 1981). There is obvious evidence of bad faith by the Defendants in this

situation. Both Lloyd and Gilke were long-term wholesale buyers of Milkcrate

accessories and now Adidas and Lloyd/Gilke are willfully using the Milkcrate mark

on their sneakers, despite full knowledge that Plaintiff owned registered trademarks

and copyrights to this mark.

68.   The seventh factor to consider is the quality of the products. The quality of an

allegedly infringing product is relevant in two ways. If the junior user's product is of a

equal quality, this factor will go more to the likelihood of confusion. *Savin Corp v.*

*Savin Grp.,* 391 F.3d 439, 461 (2d Cir. 2004). Plaintiff has produced high-quality

products that have gained the attention of national brands. These national brands have

developed collaborations with the Plaintiff in order to use the Milkcrate logo on their

products. As such, products that feature the Milkcrate logo, whether produced by

Plaintiff himself or through these collaborations with national brands, are considered

to be high value products to the consumers. Adidas is also known for making high-

quality apparel such as clothing and sneakers. A sneaker that bears the Milkcrate logo

on an Adidas product will most definitely lead consumers to believe that Milkcrate

collaborated with Adidas.

69.   Finally, the eighth factor considers the sophistication of the relevant consumers. This

factor looks to the "general impression of the ordinary purchaser, buying under the

normally prevalent conditions of the market and giving the attention such purchasers

usually give in buying that class of goods. *Star Industries, Inc. v. Bacardi & Co Ltd.,*

412F.3d 373, 412 (2d Cir. 2005). As a general rule, "the more sophisticated the

purchaser, the less likely he or she will be confused by the presence of similar marks in the marketplace. *Savin*, 391 F.3d at 461. Sneakers and other apparel on the Adidas website are very similar in price to products sold on the Milkcrate Athletics webpage. They address certain consumers with identical preferences and interest. It would therefore be difficult for a customer not to be confused when they see the copyrighted and trademarked Milkcrate logo featured on a sneaker being sold by Adidas.

70.    Having considered the eight Polaroid factors, it is clear that Plaintiff has demonstrated a high likelihood of confusion. The Defendants' actions have been, and unless enjoined will continue to be, in violation of federal and state law governing trademark infringement and unfair competition and are causing irreparable harm to Plaintiff, including blurring and tarnishing of its trademarks, loss of control over its reputation and loss of goodwill.

## COUNT I
## TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. §1114

71.    Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 70, as if fully set forth herein.

72.    Plaintiff has continuously used its registered Milkcrate Trademarks in connection with and to identify its apparel and to distinguish said products from similar products offered by other companies, by prominently displaying said marks on its goods since 1996.

73.    Defendant has infringed Plaintiff's mark in interstate commerce by various acts,such as the selling, offering for sale, promoting and advertising of products, namely the Infringing Apparel using the terms "Milkcrate" and milkcrate designs. The aforementioned names and designs as used by Defendants are extremely similar, if not virtually identical, to Plaintiff's registered Milkcrate Trademarks.

74. Additionally Defendants were selling the same goods offered for sale and sold by Plaintiff.

75. Defendant's use of "Milkcrate" and the milkcrate designs in connection with apparel and clothing is without permission or authority of the Plaintiff and said use is likely to cause confusion, to cause mistake and/or to deceive the consuming public.

76. Upon information and belief, Defendants' use of "Milkcrate" and the milkcrate design in connection with apparel has been made notwithstanding Plaintiff's well-known and prior established rights in the registered Milkcrate Trademarks and with both actual and constructive notice of Plaintiff's federal registration rights under 15 U.S.C. § 1072.

77. Upon information and belief, the aforesaid use constitutes willful and unlawful trademark infringement of the registered Milkcrate Trademarks in violation of federal law, including 15 U.S.C. §1114.

78. Upon information and belief, Defendants' infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Plaintiff's business, reputation and good will in its federally registered Milkcrate Trademarks. Therefore Plaintiff has no adequate remedy at law.

79. Defendants have caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonableattorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT II
## FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. §1125(a)

80. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 79.

81.   Plaintiff has exclusively used the Milkcrate Trademarks for over twenty-five (25) years and has established ownership in the Milkcrate Trademarks and the exclusive right to use the Milkcrate Trademarks in interstate commerce in connection with clothing and sneakers.

82.   Defendants' use of the name "Milkcrate" and milkcrate designs in connection with clothing and apparel constitutes a false designation of origin and a false or misleading description and representation of fact in interstate commerce which is likely to cause confusion and mistake, and is likely to deceive as to the affiliation, connection and/or association of Defendants with Plaintiff and is likely to mislead consumers to believe that the Defendants' products, specifically the Infringing Apparel, are sponsored, approved or somehow associated with Plaintiff.

83.   By reason of the foregoing, the trade and public are likely to be and will continue to be confused, misled, or deceived, and Plaintiff has, is now, and will continue to suffer irreparable injury to its goodwill and reputation for which it has no adequate remedy at law.

84.   Upon information and belief, Defendants have intentionally and knowingly adopted and used a name, mark, or false designation of origin likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the goods offered for sale and sold by the Defendants.

85.   By virtue of the foregoing, Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

86.   Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. The irreparable harm to the Plaintiff will continue, without any adequate remedy at

law, unless and until Defendants' unlawful conduct is enjoined by this Court.

87.   Upon information and belief, Defendants are using the marks "Milkcrate" and the milkcrate design in connection with the sale and advertising of the Infringing Apparel willfully and with knowledge that said names, and symbols are false, misleading, and deceptive, and with the intent to unfairly compete with Plaintiff.

88.   Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT III
## NEW YORK COMMON LAW TRADEMARK INFRINGEMENT

89.   Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 88 above as though fully set forth herein.

90.   Plaintiff has been using the Milkcrate Trademarks since 1996, and some since 2006, both in New York State and internationally to identify and signify it as the source of its goods and services.

91.   Through Plaintiff's extensive and continuous use and publicity the Milkcrate Trademarks have become well-known in New York state and beyond and have earned tremendous goodwill among New Yorkers and among individuals located around the world.

92.   Defendants' use of the Milkcrate Trademarks, without the authorization or consent of Plaintiff, in connection with its Infringing Apparel, constitutes a use in commerce that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of the Plaintiff's goods such that consumers may believe that Defendants'

goods are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated or connected with Plaintiff.

93.     By virtue of the foregoing, Defendants have infringed and continue to infringe upon the Milkcrate Trademarks.

94.     Upon information and belief, Defendants have intentionally and knowingly adopted and used a name, mark, or false designation of origin likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the goods offered by Defendants.

95.     Defendants' acts are causing and continue to cause Plaintiff harm in the nature of lost sales.

96.     Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. The irreparable harm to the Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

**COUNT IV**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 360-1**

97.     Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 96 above as though fully set forth herein.

98.     Defendants' use of "Milkcrate" and milkcrate designs, despite Plaintiff's exclusive use and rights in the distinctive Milkcrate Trademarks have injured and will continue to injure Plaintiff's business reputation and have diluted and tarnished and will continue to dilute the distinctive quality of Plaintiff's strong and distinctive Milkcrate Trademarks marks by blurring the identity between the Plaintiff's Milkcrate Trademarks and its goods or otherwise lessening the capacity of Plaintiff's Milkcrate

Trademarks to exclusively identify Plaintiff and its goods and/or by tarnishing the positive associations represented by Plaintiff's Milkcrate Trademarks.

99.   Defendants' actions are in violation of New York General Business Law section 360-1 and are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. This irreparable harm to Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

**COUNT V**
**DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK**
**GENERAL BUSINESS LAW § 349**

100.   Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 99 above as though fully set forth herein.

101.   Defendant's use of the "Milkcrate" name and milkcrate designs constitutes an unlawful and deceptive act and practice in connection with advertising, promotion, marketing, distribution, and sale of goods in New York.

102.   Defendants' acts, misbranding its goods and misleading consumers, have resulted in and will continue to cause confusion and deception of the public in violation of New York General Business Law § 349, *et seq.*

103.   Defendants' wrongful conduct has caused and will continue to cause irreparable harm and injury to Plaintiff. This irreparable harm will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

104.   Upon information and belief, Defendants' deceptive trade practices are willful, intentional and egregious, justifying statutory and treble damages in an amount to be determined at trial, as well as an award of attorneys fees' under New York General

Business Law § 349(h).

## COUNT VI
## COMMON LAW UNFAIR COMPETITION

105.   Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 104  above as though fully set forth herein.

106.   Defendants' use of "Milkcrate" and milkcrate designs as a source identifier and trademark, without the authorization or consent of Plaintiff in connection with its goods is likely to cause confusion and mistake and to deceive consumers as to the source, origin, sponsorship or affiliation of Defendants' goods and constitutes trade name and trademark infringement, unfair competition and misappropriation of Plaintiff's goodwill and reputation in violation of the laws of the State of New York.

107.   Upon information and belief, Defendants have adopted and used "Milkcrate" and the milkcrate designs as a trade name and trademarks in bad faith with the intent to trade off of Plaintiff's goodwill. Defendants adopted and continued to use this name with knowledge of Plaintiff's many years of exclusive use of its Milkcrate Trademarks. Despite this knowledge and the fact that Defendants could provide goods and services under another name, it decided instead to misappropriate Plaintiff's name and use it as its own.

108.   Defendants' acts are causing and continue to cause Plaintiff irreparable harm in the nature of loss of control over its reputation, and loss of substantial consumer goodwill. This irreparable harm to Plaintiff will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

## COUNT VII
## COPYRIGHT INFRINGEMENT – 17 U.S.C. . § 501, *et seq.*

109.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

through 108, as fully set forth herein.

110.    Defendants' reproduction, distribution, and promotion of the Milkcrate's copyrighted logos and designs continues to this day.

111.    Defendants have neither requested permission nor compensated Plaintiff for the use of Plaintiff's copyrighted work, even though Defendants received money and other substantial benefits from Plaintiff's logos and designs.

112.    Defendants' reproduction, and distribution of the copyrighted Milkcrate logo and their authorizing others to do the same, infringes Plaintiff's exclusive rights under United States Copyright Act, 17 U.S.C. § 501, *et seq.*

113.    Defendant's conduct in infringing the Milkcrate copyrighted logos and designs is knowing and willful.

114.    As a direct and/or proximate cause of Defendants' wrongful conduct, Plaintiffs have been irreparably harmed, suffered (and continued to suffer) damages, and Defendants have profited in an amount to be determined at trial.

**COUNT VIII**
**INFRINGEMENT OF COPYRIGHT CLAIM FOR STATUTORY DAMAGES**

115.    Plaintiff repeats and realleges every allegation contained in paragraphs 1 through 114, as though fully set forth herein.

116.    Defendant infringed Plaintiff's exclusive copyright in the Milkcrate copyrighted logos and designs when they copied the logos and designs on their sneakers. Such copying was wholly unauthorized. Defendants did not acquire any consent, authority, approval, or license from Plaintiff as the owner of the copyrighted work. By virtue of the Defendants' commercial exploitation of this unauthorized copying, the Defendants have realized illegal revenues.

117.    As a direct and proximate result of Defendants' infringement on Plaintiff's exclusive
        copyright of the Milkcrate copyrighted logos and designs, Plaintiff has suffered
        significant damages, which are continuing in nature and will likely continue in the
        future.

118.    Pursuant to 17 U.S.C. § 504(c), Plaintiff is entitled to statutory damages

### COUNT IX
### "REVERSE PASSING OFF" UNDER THE LANHAM ACT § 43(a), 15 U.S.C. § 1125(a)

119.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1
        through 118, as though fully set forth herein.

120.    The Defendants have appropriated and copied the original expression of the
        Milkcrate copyrighted logos and designs without consent, credit, or compensation by
        using the logo on their sneakers.

121.    As a result, members of the public have been deceived and/or confused into believing
        that these sneakers are the independent creation of the Defendants. Plaintiff is
        seriously and significantly injured by such deception and misattribution, in that it
        negatively impacts their ability to distribute, market, and otherwise avail themselves
        to the Milkcrate copyrighted logos and designs and they are not able to further their
        career aspirations with the same opportunity as without the infringement.

122.    By engaging in the wrongful conduct described herein, Defendants have violated
        Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a) for Reverse Passing Off.
        Defendants have engaged in the conduct described herein with fraudulent intent and
        with actual knowledge of the harm being caused to Plaintiffs by such wrongful
        conducts/acts; as such, this exceptional case merits an ward of treble damages and
        attorneys' fees against Defendants.

123.    Defendants' aggregate acts and conduct have caused, and will continue to cause, the

Plaintiff significant and irreparable injury that cannot be adequately compensated or

measured in damages. Plaintiffs have no adequate remedy at law and will suffer

immediate and irreparable loss, damage, and injury unless the Defendants are

restrained and enjoined from continuing to engage in such wrongful conduct.

**COUNT X**
**UNJUST ENRICHMENT**

124.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 123, as though fully set forth herein.

125.    By reason of the foregoing acts, Defendants have become unjustly enriched at the

expense of Plaintiffs by failing to license the right to use the Milkcrate copyrighted

logos and designs and by realized monetary gain from their unauthorized use of the

copyrighted logos and designs.

126.    Defendants have been unjustly enriched in an amount which cannot be precisely

determined at this time but will be ascertained through proof at trial.

**COUNT XI**
**DEMAND OF ACCOUNTING**

127.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 126, as though fully set forth herein.

128.    As demonstrated herein, Plaintiff has an economic interest in all of the money that is

generated from the distribution and any other exploitation of the Milkcrate

copyrighted logos and designs in that they are the copyright owner of the logos and

designs and have never granted Plaintiffs permission to use their copyrighted work.

Moreover, Plaintiff has an economic interest in any future exploitation of the

Milkcrate logos and designs and any royalties which result from any such future

exploitation.

129.    Plaintiff is informed and believes that Defendants have generated an undetermined –
        yet substantial – amount of money, due to the commercial success of the infringing
        sneakers through sales, distribution, promotion, circulation, and other forms of
        exploitation.

130.    The amount of money/proceeds due from Defendants is unknown to Plaintiff and
        cannot be ascertained without an accounting of all the Defendants' financial records
        related to the infringing sneakers.

131.    As a result of Defendants' actions, Plaintiff has been damaged in an amount to be
        proven at trial after an accounting has been conducted. Accordingly, Plaintiff hereby
        requests that the Court order an accounting of all of the Defendant's financial records
        related to the infringing sneakers in order to determine the sums rightfully due to
        Plaintiff and that those sums be paid to them.


## COUNT XII
## VICARIOUS COPYRIGHT INFRINGEMENT

132.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1
        through 131, as though fully set forth herein.

133.    The reproduction, distribution, and creation of derivative works from the Milkcrate
        copyrighted logos and designs constitutes the direct infringement of the logos and
        designs and Plaintiff's copyright thereto.

134.    Upon information and belief, the Defendants derive a direct financial benefit from
        this infringement, including without limitation revenue sharing and/or royalty
        payments for each infringing version sold.

135.    Upon information and belief, Plaintiff has the right and ability to supervise the

activities of those engaged in the infringement, including without limitation

contractual rights, license agreements, and/or other artistic or approval rights.

136.    Defendants' acts of infringement were willful, in disregard of, and with indifference

to, the rights of Plaintiffs.

137.    As a result of Defendants' acts or omissions as set forth herein, Plaintiffs have

suffered and continue to suffer substantial damages to their business including,

without limitation, diversion of trade, loss of profits, injury to goodwill and

reputation, and the dilution of the value of their rights, none of which may be fully

ascertained at this time. The Defendants have also unlawfully profited from their

infringement, constituting actual damages not yet fully ascertainable but expected to

be sufficiently established through discovery and trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Milkcrate Athletics, Inc. prays that:

1. Defendants and all agents, officers, employees, representatives,

successors, assigns, attorneys, and all other persons acting for, with, by, through, or

under authority from Defendants, or in concert or participation with Defendants, and

each of them, should be permanently enjoined, from:

a.    using any of the Milkcrate trademarks or copyrights, or any

other copy, reproduction, or colorable imitation or simulation of Plaintiff's

trademarks/copyrights on or in connection with Defendants' goods or services;

b.    using any trademark, copyright, service mark, name, logo,

design or source designation of any kind on or in connection with Defendants' goods or

services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly

similar to, or in any way similar to the trademarks, copyrights, service marks, names, or logos

of Plaintiff, including the Milkcrate trademarks and copyrights;

          c.      using any trademark, copyright, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiff, or are sponsored or authorized by or in any way connected to or related to Plaintiff;

          d.      passing off, palming off, or assisting in passing off or palming off, Defendants' goods or services as those of Plaintiff, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

          e.      Engaging in any activity constituting unfair competition with Plaintiff, or constituting an infringement of Plaintiff's Milkcrate trademarks/copyrights; and

          f.      Registering or applying to register as a trademark, copyright, service mark, trade name, internet domain name or any other source identifier or symbol of origin, that is at all similar to any of the Milkcrate trademarks/copyrights, or any other mark or name that infringes on or is likely to be confused with Plaintiff's Milkcrate trademarks, copyrights, or trade name.

    2.  That Defendants be required to account for all inventory of merchandise bearing, sold or advertised using the name "Milkcrate" or a picture or drawing of a milkcrate that is similar to the designs that are part of the Milkcrate trademarks/copyrights;

    3. Defendants should be ordered to recall all of the Infringing Apparel and any other products bearing any of the Milkcrate trademarks, copyrights, or any other confusingly similar markor designation, which have been shipped by Defendants or under its authority, to any customer including, but not limited to, any wholesaler, distributor, retailer, consignor, or

marketer and also to deliver to each customer a copy of this Court's order as it relates to said injunctive relief against Defendants;

4. Defendants should be ordered to deliver up for impoundment and for destruction all goods including but not limited to apparel, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material, stationery or other materials in the possession, custody, or under the control of Defendants that are found to adopt. To infringe, or to dilute any of Plaintiff's Milkcrate trademarks/copyrights or that otherwise unfairly compete with Plaintiff and its product and services.

5. That Defendants account to and pay Plaintiff for all of Defendants' profits, gains and sums arising from the acts of infringement and unfair competition alleged herein, including that Plaintiff should be awarded all damages caused by the acts forming the basis of this Complaint;

6. Based on Defendants' knowing and intentional use of confusingly similar imitations of Plaintiff's Milkcrate trademarks and copyrights, the damages award be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a), 17 U.S.C. § 504, and New York law;

7. Defendants should be required to pay to Plaintiff, the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), and 17 U.S.C. § 505;

8. Based on Defendants' willful and deliberate infringement of Plaintiff's Milkcrate trademarks/copyrights, and to deter such conduct in the future, Plaintiff should be awarded punitive damages; and

9. Plaintiff has such other and further relief as this Court may deem just and proper.

Dated
July 27, 2021

KEVON GLICKMAN LAW, LLC

By: *Kevon Glickman*
Kevon Glickman, Esq.
329 W. 3rd Ave
Conshohocken, PA 19428
Tel: (610) 761-6833
E: kevonglickman@icloud.com
*Attorney for Plaintiff*

## <u>VERIFICATION</u>

I, Aaron LaCanfora, the primary owner and operator of Plaintiff Milkcrate Athletics, Inc., being duly sworn, deposes and says: I am the primary owner and operator of Plaintiff herein, Milkcrate Athletics, Inc. I have read the foregoing Verified Complaint, know the contents thereof and believe the same to be true, except as to the matters alleged upon information and belief, and as to those matters, I believe them to be true.

By:_____
Aaron LaCanfora